IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN WILLIAMS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-6293 |
| | : | |
| TERESA D. MILLER, *et al.*, | : | |
|     Defendants. | : | |

<u>**MEMORANDUM**</u>

**MCHUGH, J.**                                                                                                **JANUARY 27, 2026**

      Plaintiff Shawn Williams, a pretrial detainee currently committed at Norristown State Hospital ("NSH"), filed a *pro se* Complaint pursuant to 42 U.S.C. 1983, asserting violations of his constitutional rights and related claims arising from his pending state court criminal case and his involuntary commitment to Norristown. Currently before the Court are Williams's Complaint ("Compl." (ECF No. 1)), his Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 2), and his Prisoner Trust Fund Account Statement (ECF No. 3.)[1] In his Complaint, Mr. Williams asserts claims against Teresa Miller, identified as the Secretary of Public Welfare;[2] Chief Executive Officer of NSH Jessica Keith; Laura Williams, identified as the Warden of

---

[1] Also pending is Williams's Motion for Leave to Amend and Review ECF No. 10 (ECF No. 15). The Motion seeks an extension of time in which to file objections to the Report and Recommendation filed in the United States District Court for the Middle District of Pennsylvania recommending transfer of this action to this Court. (*See* ECF No. 9.) In light of the subsequent adoption of the Report and Recommendation and transfer of the case to this Court, (*see* ECF Nos. 11, 12), Williams's Motion will be denied as moot.

[2] Miller is the former Secretary of the Pennsylvania Department of Human Services, which was previously known as the Department of Public Welfare.

Delaware County Prison;³ Ridley Township Detective Marc McKinney; and Wellpath Health Services Administrator Kristen Grady.  (Compl. at 2-3.)  For the following reasons, the Court will grant Williams leave to proceed *in forma pauperis*.  His claims seeking money damages arising from violations of the Pennsylvania Constitution, and claims asserting violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq*. ("ADA") and Section 504 of the Rehabilitation Act ("RA") will be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Any claim seeking declaratory or injunctive relief arising from violations of provisions of the Pennsylvania Constitution, Williams's Fourteenth Amendment claims, and his claims asserting violations of the Mental Health Procedures Act, 50 P.S. §7101 *et seq*. ("MHPA") and Mental Retardation Act ("MRA") will be dismissed without prejudice for failure to state a claim, and he will be granted leave to amend these claims.  His claims seeking release from custody will be dismissed without prejudice to his filing of a petition for writ of *habeas corpus*.  Mr. Williams's malicious prosecution claim will be dismissed without prejudice, but without leave to amend at this time.  Williams's remaining § 1983 claims, which the Court understands are asserted against Defendant McKinney, will be severed from the claims against the other named Defendants, filed in a new civil action, and will be stayed pursuant to *Younger v. Harris*, 401 U.S. 37 (1971) until the underlying criminal proceedings that are pending against Mr. Williams in state court are resolved.

---

³ Williams is the former Warden of the George W. Hill Correctional Facility ("GWH"), located in Delaware County.

I.      **FACTUAL ALLEGATIONS**[4]

Mr. Williams's allegations are brief and lacking in detail. He alleges that the events giving rise to his claims occurred between December 2021 and July 2025. (Compl. at 4.) On December 20, 2021, Williams was arrested and subjected to a search. (*Id*.) His car, home, and cell phone were also searched. (*Id*.) Williams claims that the searches and arrest were illegal. (*Id*.) On April 11, 2022, he filed a motion to suppress the evidence obtained through the searches. (*Id*.) On June 13, 2022, Mr. Williams was found to be incompetent to stand trial and approximately two years later was committed to NSH. (*Id*.) In October, 2024, Williams was determined to be competent, allegedly based on a false report, and was returned to prison. (*Id*.) On July 1, 2025, he was again committed to NSH, whereupon his previously scheduled surgery, the nature of which Williams does not identify, was cancelled. (*Id*.) Williams claims that while he has been committed to NSH, Grady and Keith have denied him access to outpatient programs, Dr. Perice, identified as the Director of Wellpath, LLC but not named as a Defendant, has denied him medical treatment, Miller has failed to comply with an unidentified settlement agreement, the consequences of which are not detailed, and Warden Williams has failed to release him from custody. (*Id*.) Mr. Williams claims that he has been committed without a warrant.[5] (*Id*.)

---

[4] The factual allegations set forth in this Memorandum are taken from Williams's Complaint (ECF No. 1). The Court adopts the pagination supplied by the CM/ECF docketing system. Where appropriate, grammar, spelling, and punctuation errors in Williams's pleading will be corrected for clarity.

[5] It is not clear whether Williams refers to GWH or NSH when he claims that he has been "committed" without a warrant, because while he claims that the GWH Warden will not release him from that facility, where he was a pretrial detainee, he alleges that he was involuntarily committed to NSH. The Court notes that Williams filed 47 pages of Exhibits with his Complaint. (*See* ECF No. 1-1.) The Exhibits are comprised of court filings and other documents related to the pending state court criminal proceedings, and docket entries in that case.

Williams asserts claims for violation of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, violation of his rights under the Pennsylvania Constitution, violations of the MHPA, the Mental Retardation Act, the ADA, and the RA. (*Id*. at 5.) He also asserts a malicious prosecution claim. (*Id*.) As relief, he seeks a declaratory judgment,[6] injunctive relief,[7] and money damages. (*Id*.)

The publicly available docket in *Commonwealth v. Williams*, CP-23-CR-0452-2022 (C.P. Delaware) reflects that on December 21, 2021, Williams was arrested and charged with murder in the first degree, murder in the third degree, and related weapons violations. (*Id*.) On January 5, 2026, Williams was found incompetent to stand trial and all proceedings in the case were stayed. (*Id*.) The case status is currently listed as awaiting a hearing, presumably addressing Williams's fitness to stand trial. (*Id*.)

---

[6] Williams requests unspecified declaratory relief. (Compl. at 5.) Declaratory relief is unavailable to adjudicate past conduct, so Williams's request for this relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

[7] Williams requests both preliminary and permanent injunctive relief, although the nature of the relief he requests is unclear. (Compl. at 5.) In light of the Court's disposition of his claims, Williams's request for injunctive relief will be denied without prejudice at this time.

## II.     STANDARD OF REVIEW

The Court will grant Mr. Williams leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[8] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Williams is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). *See also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it by name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to

---

[8] Because Williams is a prisoner, the Prison Litigation Reform Act requires that he pay the full filing fee in installments regardless of the outcome of this case.

identify any possible claim that the facts alleged could potentially support."). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Vogt*, 8 F.4th at 185.

## III.  DISCUSSION

### A.  Claims Under the Pennsylvania Constitution

Mr. Williams purports to bring claims under Article 1, Sections Nine, Ten, and Eleven of the Pennsylvania Constitution.[9] "Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution." *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*). As there is no private right of action for damages under the Pennsylvania Constitution, the damages claims are dismissed with prejudice . *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

Pennsylvania courts and the United States Court of Appeals for the Third Circuit have recognized that a plaintiff may maintain a successful cause of action directly under the provisions of the Pennsylvania Constitution for equitable remedies such as injunctive and declaratory relief. *See Pocono Mountain Charter Sch.*, 442 F. App'x at 688 (citing *Moeller v. Bradford Cnty.*, 444 F. Supp. 2d 316, 320–21 (M.D. Pa. 2006) ("[I]t is well settled that

---

[9] Section Nine sets forth the rights of the accused in criminal proceedings, Section Ten governs the initiation of criminal proceedings and addresses double jeopardy and eminent domain, and Section Eleven requires that all courts be open and provides for suits against the Commonwealth in certain circumstances. Pa. Const. Art. 1, §§ 9, 10, 11.

individual plaintiffs may bring suit for injunctive relief under the Pennsylvania Constitution") and *Jones v. City of Philadelphia*, 890 A.2d 1188, 1216 (Pa. Cmmw. Ct. 2006) ("[O]ther remedies, such as declaratory or injunctive relief . . . are . . . remedies under the Pennsylvania Constitution.")). However, although Mr. Williams asserts claim under Sections Nine, Ten, and Eleven of the Pennsylvania Constitution, he does not identify which Defendant violated these provisions of the Constitution or how. Additionally, although he requests declaratory and injunctive relief, Williams does not identify the declaration he seeks or the nature of the injunctive relief he seeks and does not tie these requests for relief to his claims under the Pennsylvania Constitution. To the extent Mr. Williams seeks declaratory or injunctive relief for violations of the Pennsylvania Constitution, his claims are conclusory and undeveloped and, therefore, not plausible. These claims will be dismissed without prejudice and Williams will be granted leave to amend.

      **B.**     **Claims against Warden Williams**

The only allegation in the Complaint concerning Delaware County Prison Warden Laura Williams is that she has refused to release Williams. (Compl. at 5.) The Court understands Williams to be asserting a claim seeking release from custody. However, the Court cannot grant this relief in a § 1983 action.

"[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Muhammad v. Close*, 540 U.S. 749, 750 (2004) (*per curiam*) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus," rather than a § 1983 action (citing

7

*Preiser*, 411 U.S. at 500)); *Jaffery v. Atl. Cnty. Prosecutor's Office*, 695 F. App'x 38, 41-42 (3d Cir. 2017) (*per curiam*) ("[T]o the extent Jaffery seeks dismissal of the charges against him as a result of constitutional violations, such relief is only available through a writ of habeas corpus."); *Duran v. Weeks*, 399 F. App'x 756, 759 (3d Cir. 2010) (*per curiam*) ("[T]o the extent that Duran is seeking dismissal of the charges against him as a result of constitutional violations, he is essentially asking for relief only available through habeas corpus.")  This means that "whenever [a prisoner's] challenge ultimately attacks the 'core of habeas' — the validity of the continued conviction or the fact or length of the sentence — [the] challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition." *Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002).  Accordingly, Mr. William's claim against Warden Williams seeking release from confinement will be dismissed.  *See Garrett v. Murphy*, 17 F.4th 419, 430 (3d Cir. 2021) ("[W]henever a plaintiff pleads a violation of § 1983 and effectively seeks habeas relief, the plaintiff fails to state a § 1983 claim.  Instead, the prisoner's only federal remedy is through a writ of habeas corpus after exhausting state remedies.").  The dismissal will be without prejudice to Williams filing a petition for writ of *habeas corpus*.

    **C.**    **Claims Under the ADA and RA**

Mr. Williams purports to asserts claims under the ADA and RA, asserting that he has been denied unspecified "accommodations and modifications."  (Compl. at 5.)  For the following reasons, these claims are not plausible and will be dismissed with prejudice.

"Both [Title II of] the ADA and the RA require public entities, including state prisons, to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019); *see also Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting the phrase

"services, programs, or activities" in Title II of the ADA includes recreational, medical, educational, and vocational prison programs). "[W]hen a plaintiff sues under both the RA and the ADA, [courts] often address both claims in the same breath, construing the provisions of both statutes in light of their close similarity of language and purpose," since "the scope of protection afforded under both statutes, *i.e.*, the general prohibition against discrimination, is materially the same." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (internal quotations, citations, and alterations omitted). Although the substantive standards for determining liability under the Rehabilitation Act and the ADA are the same, *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014), a party who seeks to proceed under § 504 "must show that the allegedly discriminating entity receives federal funding." *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020) (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 n.10 (3d Cir. 2013)); *see also* 29 U.S.C. § 794(a).

To state a plausible claim under either the ADA or the RA, a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288-89. The plaintiff "must also show intentional discrimination under a deliberate indifference standard [if] he seeks compensatory damages." *Id.* at 289 (footnote omitted). A plaintiff may meet that standard in two ways: "first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs, or, second, by alleging facts indicating that she could prove that the risk of cognizable harm was so great and so obvious that the risk and the failure to respond will alone support finding deliberate indifference." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) (internal quotations and alterations omitted).

To allege plausibly that he is a "qualified individual with a disability," a plaintiff must provide facts to show that he has a "disability" which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual . . . ." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12101(2)(A). With the passage of the Americans with Disabilities Act Amendments Act, Congress declared that "[t]he definition of disability shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." Pub. L. No. 110–325, §§ 2(b)(1)-(6), 3(2)(a), § 4(a), 122 Stat. 3553, 3555. Additionally, the ADAAA requires a "less searching analysis" of whether a plaintiff is "substantially limited." *Kravits v. Shinseki*, No. 10–861, 2012 WL 604169, at *7 (W.D. Pa. Feb. 24, 2012).

The proper defendant under a Title II ADA claim is the public entity or an individual who controls or directs the functioning of the public entity. *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002). The proper Defendant under an RA claim is the public entity receiving federal assistance. *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals"). Title II of the ADA does not provide for individual liability. *See Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of those circuits

which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim.").

The Court need not consider whether Mr. Williams has adequately alleged that he is a qualified individual with a disability who has been subjected to intentional discrimination because of his disability, because the named Defendants, all of whom are individuals and all of whom are sued in their individual capacities, are not subject to liability under either the ADA or the RA.  See *Kokinda*, 779 F. App'x at 942; *Bowens*, 674 F. App'x at 136; *A.W*, 486 F.3d at 804. Accordingly, Mr. Williams's ADA and RA claims against the named Defendants will be dismissed with prejudice.

### D.     Claims Under the MHPA and MRA

Mr. Williams alleges that Grady and Keith have failed to provide him with access to outpatient programs while he has been committed to NSH.  (Compl. at 5.)  The Court liberally construes these allegations as asserting violations of the MHPA and the MRA.  However, without more, these claims are not plausible, because a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other."  *Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018).  Accordingly, Williams's MHPA and MRA claims will be dismissed without prejudice, and he will be granted leave to amend these claims.

### E. Malicious Prosecution Claims

To allege a plausible malicious prosecution claim under section 1983, a plaintiff must asserts facts that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009).

Mr. Williams's claim is not plausible because he has not alleged that the state court criminal proceedings have terminated in his favor. Indeed, those proceedings are stayed according to the publicly available docket. Therefore, Williams cannot state a claim for malicious prosecution at this time. However, the Court will dismiss his malicious prosecution claim without prejudice so that he is not precluded from reasserting it later if the charges terminate in his favor. In other words, in the event the criminal proceedings are resolved in his favor, Mr. Williams may file a new case raising this claim.

### F. Section 1983 Claims

Williams asserts claims based on alleged violations of his constitutional rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to

be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

### 1. Deliberate Indifference Claims

Williams claims that upon his commitment to Norristown, a previously scheduled surgery was cancelled. The Court liberally construes this as a claim for deliberate indifference to his serious medical needs. However, the claim, as pled, is not plausible.

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[10] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-

---

[10] As it appears that Mr. Williams was a pretrial detainee at the time of the events in question, the Fourteenth Amendment, rather than the Eighth Amendment, governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

"If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff.").

Although Mr. Williams alleges that previously planned surgery was cancelled when he was again committed to NSH in July 2025, he does not identify which, if any, of the named Defendants made the decision to cancel the surgery. The absence of factual allegations describing the Defendants' personal involvement in the conduct resulting in the alleged constitutional violation renders Williams's deliberate indifference claims not plausible. *See Rode*, 845 F.2d at 1207; *Dooley*, 957 F.3d at 374. Also, Williams does not describe the nature of the surgery or the underlying problem for which the surgery was scheduled but postponed, making it impossible to determine whether the medical need was serious. Mr. Williams's deliberate indifference claims will be dismissed without prejudice, and he will be granted leave to amend these claims.

### 2.     Cruel and Unusual Punishment Claims

Mr. Williams alleges in conclusory fashion that he was subjected to "cruel and inhuman treatment" (Compl. At 5) but does not describe the treatment to which he refers and does not

identify which, if any, of the named Defendants engaged in conduct that resulted in the alleged deprivation. As with his MHPA and MRA claims, Williams's "'passing reference' to cruel and unusual punishment "does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." *Campbell*, 2022 WL 6172286, at *7; *Alexis*, 2018 WL 5077899, at *2 n.1. Accordingly, Mr. Williams's cruel and unusual punishment claims will be dismissed without prejudice, and he will be granted leave to amend these claims in the future.[11]

---

[11] Excessive force claims brought by convicted prisoners are analyzed under the Eighth Amendment's Cruel and Unusual Punishment Clause, while claims brought by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015); *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 193-94 (3d Cir. 2021). The distinction is significant because the "language of the two Clauses differs, and the nature of the claims often differs." *Kingsley*, 576 U.S. at 400. When a convicted prisoner brings an Eighth Amendment excessive force claim against a prison official, the court must consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The malicious-and-sadistic standard for an Eighth Amendment claim is subjective, but an objective standard is applied to a Fourteenth Amendment claim. *See Kingsley*, 576 U.S. at 400 (explaining that the reason for the lesser standard in a Fourteenth Amendment claim is that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'"); *Jacobs*, 8 F.4th at 194 ("In 2015, the Supreme Court clarified that the subjective Eighth Amendment standard does not apply to pretrial detainees.").

Because Williams was a pretrial detainee during the relevant period, the Due Process Clause of the Fourteenth Amendment governs his excessive force claims. *Kingsley*, 576 U.S. at 397 ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (internal quotation and citation omitted). To state a due process violation based on excessive force, a pretrial detainee must allege plausibly that "that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396-97. "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397. Whether unreasonable force has been used against a detainee "requires 'careful attention to the facts and circumstances of each particular case.'" *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts should analyze "these circumstances 'from the perspective of a reasonable officer on the scene'" while keeping in mind that decisions about force require the expertise of correctional officers, "'who must have substantial discretion to devise reasonable solutions to the problems they face.'" *Id.* at 195 (quoting *Kingsley*, 576

15

### 3. Claims Subject to Severance and to Stay Pursuant to *Younger*

Mr. Williams asserts Fourth Amendment claims for illegal search and seizure, false arrest, false imprisonment, Fifth Amendment claims for violation of his rights against self-incrimination, Sixth Amendment speedy trial claims, and unspecified Fourteenth Amendment claims. (Compl. at 5.) These claims, which the Court understands are asserted against Detective McKinney and arise from Williams's arrest and subsequent criminal proceedings, are misjoined with the claims asserted against the other Defendants, which address conduct related to his conditions of confinement. As a result, the two sets of claims cannot proceed in the same civil action, and the Court will sever the claims against McKinney from those against the remaining Defendants.[12] The Clerk of Court will be directed to open a new civil action, in which the claims

---

U.S. at 397 & 399). Williams should consider the forgoing precepts if he chooses to file an amended complaint.

[12] Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim, . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *Pew v. Little*, No. 22-1488, 2024 WL 967823, at *2 (E.D. Pa. March 6, 2024 (citing *McKinney v. Prosecutor's Office*, No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted)). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *Gorrio v. Terra*, No. 23-4366, 2023 WL 8373167, at *6 (E.D. Pa. Dec. 4, 2023) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)). Indeed, "[t]he courts[] . . . have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison, let alone multiple prisons." *McKinney*, 2014 WL 2574414, at *15. To remedy a misjoinder, a Court may add or drop a party or sever any claims. Fed. R. Civ. P. 21. Rule 21 "give[s] district courts broad discretion in deciding whether to sever a case by way of severing parties or claims." *Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 467 (E.D. Pa. 2013).

against McKinney will be filed and stayed pursuant to *Younger* for the following reasons, should Mr. Williams decide to pursue them.

In *Younger*, 401 U.S. 37, the United States Supreme Court "established a principle of abstention when federal adjudication would disrupt an ongoing state criminal proceeding." *Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005) (discussing *Younger*). Pursuant to Younger, this Court has an obligation to abstain from considering cases where to do so "would interfere with certain ongoing state proceedings." *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 461 (3d Cir. 2019) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77-78 (2013)). When assessing whether the *Younger* abstention is appropriate, the Court proceeds in two sequential stages. *Greco v. Bruck*, No. 21-1035, 2022 WL 1515375, at *2 (3d Cir. May 13, 2022). At the first stage, the Court must examine the underlying state court litigation to determine whether it falls into one of three categories of cases: (1) criminal prosecutions, (2) quasi-criminal state civil enforcement proceedings, and (3) civil proceedings involving orders in furtherance of the state courts' judicial function. *See PDX N., Inc. v. Comm'r N.J. Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020) (internal quotations omitted). Because Mr. Williams's criminal prosecution is the underlying state court litigation here, the first stage of the analysis is met.

---

As noted, the factual allegations in the Complaint can be broken down into essentially two distinct sets of events – claims against McKinney related to Williams's arrest and subsequent conduct related to his criminal proceedings, and claims against the remaining Defendants related to Williams's conditions of confinement. *See Thompson v. Ferguson*, 849 F. App'x 33, 36 (3d Cir. 2021) (*per curiam*) ("Misjoinder of claims occurs when, among other things, the events that give rise to the plaintiff's claims do not stem from the same transaction."); *see also*, *Roudabush v. United States*, No. 11-980, 2011 WL 13225005, at *6 (D.N.J. July 14, 2011) ("Here, the claims arising out of the state court trial appear to be completely unrelated, factually and legally, from the claims arising out of conditions at the jail."); *Saulberry v. Atl. Cnty. Jail*, No. 10-1004 JBS, 2010 WL 3825701, at *6 (D.N.J. Sept. 24, 2010) (severing claims where "the claims arising out of the arrests are completely unrelated, factually and legally, from the claims arising out of conditions at the jail"). Accordingly, the claims will be severed.

At the second stage, courts consider three factors articulated by the Supreme Court in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Assoc.*, 475 U.S. 434, 432 (1982),[13] whether: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; and (3) there is an adequate opportunity to raise constitutional challenges in the state proceeding. *See PDX N., Inc.,* 978 F.3d at 883. Each of these factors is satisfied here. First, publicly available dockets reflect that there is an ongoing criminal prosecution in the Court of Common Pleas of Delaware County. Second, the state proceedings implicate the important interest of enforcing the Commonwealth's criminal laws against homicide and weapons violations. Third, Mr. Williams has an opportunity to raise his constitutional challenges to the validity of the charges against him in the state proceedings. *See Jaffery v. Atl. Cnty. Prosecutor's Office*, 695 F. App'x 38, 40-41 (3d Cir. 2017) (*Younger* applied where "[t]here are ongoing state criminal proceedings in the Superior Court of New Jersey that are judicial in nature, the state proceedings implicate the important state interest in prosecuting criminal behavior, and the state proceedings provide Jaffery an opportunity to raise federal constitutional defenses to prosecution"); *Lazaridis v. Wehmer*, 591 F.3d 666, 670-71 (3d Cir. 2010) (*per curiam*) (explaining that *Younger* requires only an opportunity to present federal claims in state court, and the burden rests with plaintiff to show that state procedural law bars presentation of the claims). Further, Williams has not alleged, nor is there anything in the Complaint to suggest, that his claims fall within any of the narrow exceptions to the *Younger* doctrine. *See Stagliano v. Coll*, No. 22-2691, 2023 WL 3943732, at *4 (3d Cir. June 12, 2023) (*per curiam*) (affirming

---

[13] The United States Court of Appeals for the Third Circuit has noted that when the state court proceeding is quasi-criminal, the *Middlesex* factors must be met, but when the state-court proceedings are criminal, it is not necessary to consider the *Middlesex* factors. *See Samaritano v. New Jersey*, No. 24-1889, 2025 WL 1554932, at *2 n.1 (3d Cir. June 2, 2025). In an abundance of caution, the Court will nonetheless consider the *Middlesex* factors.

application of *Younger* doctrine where plaintiff failed to plausibly plead that the state criminal proceedings were being undertaken in bad faith or for purposes of harassment, or some other extraordinary circumstances existed (citing *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989)).

Because the state criminal proceeding affords Mr. Williams an opportunity to raise his constitutional challenges, and since the claims raised in the instant civil action appear to implicate rulings that will likely be made in the state proceeding, should Williams decide to pursue those claims in a new civil action the Court will be required to stay them until the criminal proceeding has resolved.[14] *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) ("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended."); *Rex v. Fisher*, No. 12-4045, 2012 WL 3537846, at *2 (E.D. Pa. Aug. 15, 2012) (staying false arrest and illegal search claims for damages in light of pending criminal prosecution when plaintiff "ha[d] the opportunity to raise his Fourth-Amendment challenges in the course of his criminal proceeding."); *Zimmerman v. Leek*, No. 23-220, 2024 WL 3695334, at *3 (W.D. Pa. July 18, 2024), *report and recommendation adopted*, 2024 WL 3691889 (W.D. Pa. Aug. 7, 2024) (holding that, because he was still awaiting trial on underlying arrest, plaintiff's false arrest, false imprisonment, illegal search and seizure, and malicious prosecution claims were subject to *Younger*); *see also*

---

[14] In the future, when the *Younger* stay is lifted, the Court may conduct additional screening of the remaining claims in the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(i)-(iii). *See id.* (providing that "the court shall dismiss the case at any time if the court determines" that the Complaint is frivolous, fails to state a claim on which relief may be granted, or seeks damages from an immune defendant).

*Borowski v. Kean Univ.*, 68 F.4th 844, 855 (3d Cir. 2023) ("[D]ismissal of a damages claim on abstention grounds is no longer permissible.").

IV.    **CONCLUSION**

For the foregoing reasons, the Court will grant Mr. Williams's Motion for Leave to Proceed *In Forma Pauperis*. His claims seeking money damages arising from violations of the Pennsylvania Constitution, and claims asserting violations of the ADA and the RA will be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Any claim seeking declaratory or injunctive relief arising from violations of provisions of the Pennsylvania Constitution., Williams's Fourteenth Amendment claims, his malicious prosecution claims, and his claims asserting violations of the MHPA and MRA will be dismissed without prejudice for failure to state a claim, and he will be granted leave to amend these claims. His claims seeking release from custody will be dismissed without prejudice to his filing of a petition for writ of *habeas corpus*. Williams's malicious prosecution claim will be dismissed without prejudice, but without leave to amend at this time. Williams's remaining § 1983 claims, which the Court understands are asserted against Defendant McKinney, will be severed from the claims against the other named Defendants, filed in a new civil action, and, if Williams decides to pursue them, will be stayed pursuant to *Younger* until the underlying criminal proceedings that are pending against him in state court are resolved.

An appropriate Order accompanies this Memorandum.

BY THE COURT:

/s/ Gerald Austin McHugh
GERALD A. MCHUGH, J.